**Albert A. Ciardi, III, Esquire**
**Daniel S. Siedman, Esquire**
**CIARDI CIARDI & ASTIN**
**1905 Spruce Street,**
**Philadelphia, PA  19103**
**aciardi@ciardilaw.com**
**dsiedman@ciardilaw.com**
**Telephone: (215) 557-3550**
**Facsimile: (215) 557-3551**
**Attorneys for the Debtor**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **58 York Partners, LLC,** | : | |
| | : | |
| Debtor. | : | **Bankruptcy No. 21-12907** |
| | : | **(AMC)** |

**FIRST MODIFIED PLAN OF REORGANIZATION PROPOSED BY**
**DEBTOR AND DEBTOR -IN-POSSESSION 58 YORK PARTNERS, LLC**

Dated:   ~~April 1, 2022~~July 14, 2022—                    Albert A. Ciardi, III, Esquire
                                                                                    Daniel S. Siedman, Esquire
                                                                                    CIARDI CIARDI & ASTIN
                                                                                    1905 Spruce Street,
                                                                                    Philadelphia, PA  19103
                                                                                    T: (215) 557-3550
                                                                                    F: (215)557-3551

## ARTICLE I
## Introduction

On October 27, 2021, 58 York Partners, LLC, the Debtor and Debtor-in-Possession (the "Debtor"), commenced a bankruptcy case by filing a voluntary chapter 11 petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). This document is the first modified chapter 11 plan of reorganization (the "Plan") proposed by the Plan Proponent (as hereinafter defined). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court"), and which is provided to help you understand the Plan. This is a reorganizing plan. The Proponent seeks to accomplish payments under the Plan by restructuring.

## ARTICLE II
## Definitions

**A.    Defined Terms.** For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

2.1.    "ACCOUNTS RECEIVABLE" means any account as that term is defined in Section 9106 of the Pennsylvania Uniform Commercial Code, 13 P.S. §1101, et seq. (the "PA U.C.C."), and includes any right of the Debtor to payment for services rendered which is not evidenced by an instrument or chattel paper (as those terms are defined in the PA U.C.C.), whether or not it has been earned by performance.

2.2.    "ADMINISTRATIVE CLAIM" means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under § 503(b) of the Bankruptcy Code and entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.3.    "ADMINISTRATIVE CLAIMANT" means the holder of an Administrative Claim.

2.4.    "ALLOWANCE DATE" means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

2.5.    "ALLOWED" means with respect to Claims: (a) any Claim other than an Administrative Claim that is evidenced by a Proof of Claim which is or has been timely filed by the applicable Claims Bar Date or that is not required to be evidenced by a filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) any Claim Allowed pursuant to (i) the Plan, (ii) any contract, instrument, indenture, or other agreement entered into or assumed by the Debtor in connection with the Plan, or (iii) a Final

Order of the Bankruptcy Court; provided that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules of the Debtor as contingent, unliquidated, or disputed, and/or for which no Proof of Claim is or has been timely filed by the applicable Claims Bar Date, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any entity subject to Section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as the case may be.  "Allow" and "Allowing" shall have correlative meanings.

2.6.    "ALLOWED CLAIM"  means (a) a Claim that has been Allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined by the Court in favor of the holder of such Claim.  Unless otherwise specified, an "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

2.7.    "ALLOWED INTEREST"  shall mean an Interest (a) in respect to which a proof of interest has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of equity security holders prepared and filed with the Court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.8.    "ASSETS"  means all of the Debtor's Property, including without limitation Accounts Receivable, goods, chattel paper, documents, instruments, money, fixtures, contract rights, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

3

2.9.    "BANKRUPTCY CODE" means chapter 11 of title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

2.10.    "BANKRUPTCY COURT" or "COURT" means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

2.11.    "BANKRUPTCY RULES" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, promulgated by the Supreme Court of the United States.

2.12.    "BAR DATE" means the last date fixed by order of the Court for the filing of proofs of claim.

2.13.    "BUSINESS DAY" means any day except a Saturday, Sunday, or other day on which commercial banks located in the Commonwealth of Pennsylvania are authorized by law to close.

2.14.    "CASE" means the reorganization case of the Debtor under chapter 11 of the Bankruptcy Code presently captioned: In re 58 York Partners, LLC (21-12907).

2.15.    "CAUSES OF ACTION" means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

2.16.    "CLAIM"  means any claim against the Debtor, as defined by Section 101(5) of the Bankruptcy Code, including: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.17.    "CLAIMANT" means a person or entity holding a Claim (including, his, her or its successors, assigns, heirs, executors, or personal representatives) under the Plan.

2.18.    "CLASS" means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

2.19.    "CONFIRMATION DATE" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to §1129 of the Bankruptcy Code becomes a Final Order.

2.20.    "CONFIRMATION HEARING" means the hearing at which the Court considers confirmation of this Plan.

2.21.   "CONFIRMATION ORDER" means the order of the Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

2.22.   "CONTESTED CLAIM" means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a Final Order or a Claim which is scheduled as contingent, unliquidated or disputed.

2.23.   "CREDITOR" means the holder of a Claim against the Debtor.

2.24.   "DEBTOR" means 58 York Partners, LLC, as its interests may appear.

2.25.   "DEFICIENCY CLAIM" means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

2.26.   "DISBURSING AGENT" has the meaning given to such term in Section 6.4 hereof.

2.27.   "DISPUTED CLAIM" means any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part before the Effective Date.

2.28.   "DISTRIBUTION" means any payment by the Debtor to a Claimant on account of a Claim.

2.29.   "EFFECTIVE DATE" means sixty (60) days after entry of the Confirmation Order.  However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

2.30.   "FEE CLAIM" means a Claim under § 330 or § 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

2.31.   "FINAL ORDER" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has not been reversed, stayed, modified, or amended, as to which the time to appeal, petition for certiorari or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing has been timely filed, or as to which any appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing that has been or may be filed has been resolved by the highest court

to which the order or judgment was appealed or from which certiorari, reargument, reconsideration, or rehearing was sought; <u>provided</u> that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

2.32. "IMPAIRED CLASS" means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.33. "INSIDER" means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

2.34. "INTEREST" means any member interest in the Debtor issued by the Debtor prior to the Petition Date.

2.35. "LIEN" means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

2.36. "MANAGEMENT" means the senior managers of the Reorganized Debtor who are responsible for the implementation of this Plan and the day to day and overall conduct of the affairs of the Reorganized Debtor.

2.37. "PERSON" means a person within the meaning of Section 101(41) of the Bankruptcy Code.

2.38. "PETITION DATE" means October 27, 2021, the date upon which the Debtor filed its petition.

2.39. "PETITION" means the voluntary petition for reorganization filed by the Debtor with the Court on October 27, 2021 pursuant to Chapter 11 of the Bankruptcy Code.

2.40. "PLAN" means this Plan of Reorganization, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

2.41. "PLAN PROPONENT" means the Debtor.

2.42. "PRIORITY NON-TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(2), (4), (5), or (7) of the Bankruptcy Code.

2.43. "PRIORITY TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(8) of the Bankruptcy Code.

2.44. "PRO RATA" means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the

amount of such Allowed Claim bears to the aggregate amount of all Claims of such Class, including Contested Claims.

2.45.   "PROPERTY" means the real property located at 58 S. York Road in Hatboro, PA 19040.

2.46.   "REORGANIZED DEBTOR" means the Debtor in Possession as consolidated, reorganized and functioning under the Plan after the Effective Date.

2.47.   "REJECTION CLAIM" means any Claim for amounts due as a result of the rejection of any executory contract or lease by the Debtor by Final Order.

2.48.   "SCHEDULES" means the schedules of assets and liabilities filed by the Debtor with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as amended from time to time.

2.49.   "SECURED CLAIM" shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a Claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured claim in such Assets.

2.50.   "UNIMPAIRED CLASS" means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.51.   "UNSECURED CLAIM" means any Claim, whether or not disputed, liquidated or contingent, including a Rejection Claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

**B.    Rules of Interpretation**. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) except as provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that the document or exhibit as it may thereafter be amended, restated, or supplemented, or otherwise modified in accordance with the terms of the Plan; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the words "include" and "including" and variations thereof, shall not be deemed to be terms of limitation,

and shall be deemed to be followed by the words "without limitation"; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (j) any docket number references in the Plan shall refer to the docket number of any document filed with the Bankruptcy Court in the above-captioned Chapter 11 case; (k) any effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person and such interpretation shall control; and (l) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

### ARTICLE III
### <u>Classification of Claims</u>

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims or Interests is Impaired or Unimpaired. The Plan provides the treatment each Class will receive under the Plan. A Proof of Claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

3.1    **Class 1.**        <u>**Unsecured Claims.**</u>  Class 1 consists of Allowed Unsecured Claims. The Class 1 Claims are impaired under the Plan.

3.2.    **Class 2.**        <u>**Interest Holders.**</u>  Class 2 consists of the Claims of the interest holder of the Debtor. The Class 2 Claims are Impaired.

3.3.    **Class 3.**        <u>**Secured Claim of Berkshire Bank.**</u>  Class 3 consists of the secured claim of First Trust Bank. The Class 3 Claim is Impaired under the Plan.

3.4.    **Class 4.**        <u>**Secured Claim of the Montgomery County Tax Claim Bureau.**</u>  Class 4 consists of the secured claim of the Montgomery Tax Claim Bureau. The Class 4 Claim is Impaired under the Plan.

3.5    **Class 5**.        <u>**Secured Claim of the Upper Moreland-Hatboro Joint Sewer Authority.**</u>  Class 5 consists of the secured claim of the Sewer Authority. The Class 5 Claim is Impaired under the Plan.

3.6.    <u>Acceptance or Rejection of Plan.</u>  Each Impaired Class of Creditors with Claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A Class of Creditors or Interest holders shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the aggregate dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims of such Class. In the event that any Impaired Class of Creditors or Interest holders shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy

Code, the Plan Proponent will request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE IV
## Treatment of Classes of Claim

4.1.    **Class 1.**        **Unsecured Claims**. Class 1 consists of all Allowed Unsecured Claims.  Class 1 is Impaired. Class 1 Claims are estimated at $3,900,000.00.  The Debtor avers that the only potential unsecured claim is that of Berkshire Bank, which is also secured by non-debtor real estate and assets equal to the amount of the Berkshire Unsecured Claim. The Plan will distribute $0.00 on account of the unsecured claim, as such claim is fully secured by other collateral.

4.2.    **Class 2.**        **Interest Holders**.  The Class 2 Claims are Impaired.  Class 2 Claims consist of the holders of interests in the Debtor.  All existing membership interests shall be canceled.

4.3    **Class 3.**        **Secured Claim of Berkshire Bank.**  Class 3 consists of the secured claim of the Berkshire Bank.  The Class 3 Claim is Impaired under the Plan.  Berkshire Bank has a secured claim consisting of two (2) components, a first mortgage of $1,889,514.21 and a judgment lien of $85,485.79.  The Debtor proposes to pay the Class 3 Claim the amount of the $1,466,000.00 on or before the Effective Date in full and final settlement of all monies due and owing.  This payment shall satisfy the Class 3 Claim in full. Rich Ianieri, a private lender, will loan a total of $1,475,000.00 to the Debtor in exchange for a security interest in the Property. The Debtor's Property is valued at $1,975,000.00.  Therefore, Class 3 Claim shall be $1,975,000.00 which will paid with an equal interest and principal payment based on a twenty-five (25) year amortization with interest at three and 3/4 (3.75%) percent annum.  The Class 3 Claim shall mature five (5) years from the Effective Date.  Prior to the Effective Date, the Debtor shall continue to make adequate protection payments of $11,000.00, which shall be applied to interest accruing from the Petition Date to the Effective Date of the Class 3 Claim.  The Class 3 shall retain its lien on the Property until payment of the Class 3 Claim, which may be pre-paid without penalty at any time.

4.4    **Class 4.**        **Secured Claim of the Montgomery County Tax Claim Bureau.**  Class 4 consists of the secured claim of the Montgomery County Tax Claim Bureau.  The Class 4 Claim is impaired under the Plan.  The Debtor proposes to pay this claim in six (6) equal installments, with the first payment at the Effective Date and the subsequent payments to be made ever (30) days after the Effective Date.

4.5    **Class 5.**        **Secured Claim of the Upper Moreland-Hatboro Joint Sewer Authority.**  Class 5 consists of the secured claim of the Sewer Authority.  The Class 5 Claim is impaired under the Plan.  The Debtor proposes to pay this claim in six (6) equal installments, with the first payment at the Effective Date and the subsequent payments to be made ever (30) days after the Effective Date.

## ARTICLE V
### Treatment of Unclassified Claims

5.1.    <u>Administrative Claims</u>. All Administrative Claims shall be treated as follows:

a.    <u>Time for Filing Administrative Claims.</u> The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within thirty (30) days after the Confirmation Date. Such notice must include at minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim and (iii) the basis of the Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

b.    <u>Time for Filing Fee Claims.</u> Each professional person requesting compensation in the case pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. Any professional person's Fee Claim shall be permitted to include in its request for payment of a Fee Claim fees and expenses incurred for the preparation, filing and prosecution of such Fee Claim. No motion or application is required to fix fees payable to the clerk's Office or the Office of the United States Trustee, as those fees are determined by statute. Fee Claims of Ciardi Ciardi & Astin are estimated at $20,000.00.

c.    <u>Allowance of Administrative Claims.</u> An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1(a) of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to which its fee application has been properly filed pursuant to Section 5.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order. Fee Applications shall be filed on or before the 60th day from the day the Confirmation Order is signed and entered upon the docket.

d.    <u>Payment of Allowed Administrative Claim</u>. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon

the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date and so long as such modification of treatment made by the Debtor and any holder of an Allowed Administrative Claim does not impair any other Class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

    e. <u>Professional Fees Incurred After the Effective Date.</u> Any professional fees incurred by the Reorganized Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to resolve any such dispute.

    f. <u>Priority Tax Claims</u>. Priority Tax Claims are certain unsecured income, employment, payroll, sales and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present value of such Claim in one lump sum if the claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled. Therefore, the Reorganized Debtor will pay to the holders of such claims the full amount due and owing, in equal monthly installments, for five years, with interest accruing at the statutory rate as of the Petition Date. As of the Petition Date, Priority Tax Claims existed in the amount of $0.00. The Debtor proposes to pay the 2021 taxes (Local, County and School) owed to the Montgomery County Tax Claim Bureau in full upon the Effective Date.

**ARTICLE VI**
**<u>Provisions for Execution of the Plan</u>**

    6.1. <u>Plan Implementation</u>. The Plan will be funded ~~by ongoing operations of the Debtor and its lease with Bernie's of Hatboro, LLC~~ a loan with Rich Ianieri in the amount of $1,475,000.00. A true and correct copy of a Letter of Intent is attached hereto as Exhibit "A". The Debtor shall use the money to satisfy Claim 3. In exchange for the loan, Mr. Ianieri shall have a first position mortgage with the Debtor that is secured against the Property. To the extent necessary, the Debtor's new equity shall make a capital contribution of $50,000.00 at the Effective Date to cover the initial payments pursuant to the Plan and as operating capital.

    6.2. <u>Execution of Documents</u>. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

    6.3. <u>Alterations, Amendments or Modifications</u>. This Plan may be altered, amended, or modified by the Plan Proponent before or after the Confirmation Date, as provided in §1127 of the Bankruptcy Code.

    6.4. <u>Disbursing Agent</u>. Eric Kretschman shall serve as the Disbursing Agent of the Debtor. The Disbursing Agent shall serve without bond or compensation.

6.5.    <u>Final Decree</u>.  After final distributions are made, the Debtor shall file a motion to close the case and request that a final decree be issued. The Debtor shall file all interim and final plan implementation reports and pay any fees to the Office of the United States Trustee.

6.6.    <u>Retention and Enforcement of Claims</u>.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

6.7    <u>Management of the Reorganized Debtor</u>.    The day to day operational, business and financial affairs of the Reorganized Debtor shall be managed and controlled by the Reorganized Debtor and its Management who at all times shall act to implement the Plan with the sole goal of maximizing the Distributions to Claimants under the Plan upon Confirmation.

6.8    <u>Treatment of Executory Contracts and Unexpired Leases</u>.

**A.    Assumption of Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, executory contracts and unexpired leases, shall be deemed rejected as of the Effective Date pursuant to sections 365 and 1121 of the Bankruptcy Code, regardless of whether such executory contract or unexpired lease is identified specifically herein, unless such executory contract or unexpired lease (1) was assumed or rejected previously by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject filed on or before the Effective Date; or (4) is specifically identified as an Assumed Executory Contract or Assumed Lease in the Plan.  Any motions to assume or reject executory contracts or unexpired leases pending on the Effective Date shall be subject to approval of the Bankruptcy Court on or after the Effective Date by a Final Order.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumption and assignment or rejections, as applicable, of such executory contracts or unexpired leases as set forth in the Plan pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions, assumptions and assignments or rejections of executory contracts and unexpired leases, pursuant to the Plan, are effective as of the Effective Date.  Each executory contract or unexpired lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or

purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

The Debtor shall assume its current lease agreement with Bernie's of Hatboro, LLC, as set forth on Schedule G of its schedules.

**B.      Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases.** Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such executory contract or unexpired lease.

**C.      Rejection of Executory Contracts and Unexpired Leases.** Unless otherwise provided by a final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, pursuant to the Plan or the Confirmation Order, if any, must be filed and served on the Reorganized Debtor no later than thirty (30) days after the effective date of such rejection.

All Claims arising from the rejection by the Debtor of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article IV of the Plan and may be objected to in accordance with the provisions of Article IV of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**D.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.** Any monetary defaults under each executory contract or unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the default amount on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree. In the event of a dispute regarding: (1) the amount of any payments to cure such a default; (2) the ability of the Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption, the cure amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided, further, that, notwithstanding anything to the contrary herein, prior to the entry of a Final Order resolving any dispute and approving the assumption and assignment of such executory contract or unexpired lease, the Reorganized Debtor reserves the right to reject any executory contract or unexpired lease which is subject to dispute.

**E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Plan, each assumed or

assumed and assigned executory contract or unexpired lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts or unexpired leases related thereto, if any, including all easements, licenses, rights-of-way, permits, rights, privileges, immunities, options, rights of first refusal, rights of first offer and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to prepetition executory contracts or unexpired leases that have been executed by the Debtor during the above-captioned Chapter 11 case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

6.9     Plan Funding.  The Debtor's Plan shall be funded by ~~the Debtor's operations~~a loan from Rich Ianieri ~~and~~, the Debtor's lease with Bernie's of Hatboro, LLC and a cash infusion of $50,000 in exchange for 100% of the newly issued membership interests in the Debtor.  In exchange for the loan to the Debtor, Rich Ianieri shall have a first position mortgage on the Property.

6.10    New Member Interests.  Arnick Equities, LLC (EIN: 30-0198243) shall infuse $50,000 into the Debtor in exchange for 100% of the newly issued member interests.

**ARTICLE VII**
**Additional Provisions Applicable To All Classes**

7.1.    The payments, distributions and other treatments provided in respect of each Allowed Claim and Allowed Interest in the Plan shall be in full and final settlement and complete satisfaction, discharge and release of such Allowed Claim and Allowed Interest.

7.2.    Notwithstanding any of the provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time are disputed, unliquidated or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or an Allowed Interest, whereupon such payment and distribution shall be made promptly pursuant to and in accordance with this Plan.

**ARTICLE VIII**
**Provisions Governing Distributions and General Provisions**

14

8.1.   <u>Distributions</u>.  Distributions pursuant to this Plan shall be made by the Debtor as provided herein and shall be made, unless otherwise provided herein, pursuant to the relevant Plan provisions, or as soon as practicable thereafter or as may be otherwise ordered by the Court.

       a.   <u>Delivery of Distributions</u>.  Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address) of such Allowed Claims.  If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest.  All Claims for undeliverable distributions must be made to the Debtor on or before the later of (i) the first anniversary of the Effective Date, or (ii) ninety (90) days after the respective distribution was made.  After that date, all unclaimed property will become property of the Reorganized Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

       b.   <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.  All cash distributions will be made by the Debtor.

       c.   <u>Time Bar to Cash Payments</u>. Checks issued by the Debtor in respect of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of their issuance.  Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim with respect to which the check originally was issued.  Any Claim relating to a voided check must be made on or before the later of the (i) first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided.  After such date, all Claims will be discharged and forever barred and the cash, including interest earned shall be revested in the Reorganized Debtor.

       d.   <u>Setoffs</u>.  The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by, or impairment to, the Debtor of any such Claim the Debtor may have against such Claimant.

       e.   <u>De Minimis Distributions</u>.  No cash payment of less than twenty-five dollars ($25.00) will be made by the Debtor to any creditor unless a request is made in writing to Debtor to make such a payment.

       f.   <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

8.2.    Notices. Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified mail, return receipt requested, and if sent to:

(a)    *If to the Debtor, addressed to:*

58 York Partners, LLC
Attn: Eric Kretschman
58 South York Road,
Hatboro, PA 08012

(b)    *With copies to Counsel:*

Albert A. Ciardi, III Esquire
Daniel S. Siedman, Esquire
Ciardi Ciardi & Astin
1905 Spuce Street,
Philadelphia, PA  19103

8.3    Default. No default shall be declared under this Plan unless and until any payment due under this Plan has not have been made within thirty (30) days after written notice to the Reorganized Debtor and counsel for the Debtor.

## ARTICLE IX
## Effects of Confirmation

9.1.    Discharge of Claims; Injunction. Except as otherwise expressly provided in the Plan, the entry of the Confirmation Order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold Claims of or Interests in the Debtor as of the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim of or Interest in the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any Lien of any kind against the Debtor thereof, or against the Property of the Debtor with respect to any such Claim or Interest, and (d) from asserting any setoff, right of subrogation with respect to any such Claim or Interest. To the extent, however, that the Debtor defaults under the terms of the Plan and such default is not cured within thirty (30) days after the Debtor and its counsel receive notice of the default, as provided

16

for under Sections 8.2 and 8.3 of the Plan, the injunction shall be void solely to allow plan enforcement.

9.2.    **Term of Injunctions or Stays.    Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date at which time the injunction under section IX a shall be in force.**

9.3.    Exculpation.  Following the Effective Date, none of the Debtor's officers, directors, members, partners, employees or agents, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

## ARTICLE X
## Cramdown Provisions and Confirmation Request

10.1.    In the event that sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

## ARTICLE XI
## Modification of the Plan

11.1.    Modification and Amendments, Generally.    Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, unless otherwise ordered by the Bankruptcy Court, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI of the Plan.

11.2    Pre-Confirmation Modification.  At any time before the Confirmation Date, the Plan may be modified by the Plan Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the

17

Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

11.3.  <u>Post-Consummation Modification</u>.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Plan Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under these sections, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

11.4.  <u>Non-Material Modifications</u>.  At any time, the Plan Proponent may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

11.5  <u>Effect of Confirmation on Modifications</u>.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

11.6  <u>Revocation or Withdrawal of the Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption, assumption and assignment or rejection of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any claims held by the Debtor, Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person.

## ARTICLE  XII
### Retention of Jurisdiction

12.1.  The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a)    to determine any and all objections in the allowance of Claims and amendments to schedules;

(b)    to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)    to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets and collection or recovery of any assets;

(d)    to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)    to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f)    to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g)    to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h)    to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i)    to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j)    to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)    to enforce all provisions under the Plan; and

(l)    to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## ARTICLE XIII
## Causes of Action

13.1.    Litigation.  Except as otherwise provided in section 13.2 of this Plan, the Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action.

13.2.   _Powers_. The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion.

**ARTICLE XIV**
**Miscellaneous**

14.1.   _Choice of Law_.  Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

14.2.   _Payment of Statutory Fees_.  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date.  Moreover, all post-confirmation quarterly fees shall be paid by the Reorganized Debtor as and when they become due until the Bankruptcy Case is closed.

14.3.   _Discharge of Debtor_.  Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims of and Interests in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, any of its Assets or Properties and the Debtor's Estate.  Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against the Debtor will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtor, its successors, or its Assets or Properties any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

**Notwithstanding the foregoing, the discharge granted by 11 U.S.C. § 1141 (d) is modified as to the secured or priority tax debt provided for in this Plan, and the discharge of any secured or priority tax debt under this Plan shall not be effective until all secured or priority taxes provided for in the Plan have been paid in full.**

14.4.   _Severability_. Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

14.5.   _Successors and Assigns_. The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

14.6.   _Binding Effect_.  The Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, the holders of Interests, and their respective successors, heirs, legal representatives and assigns.

14.7.    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

## ARTICLE XV
## Provisions for Resolving and Treating Claims

15.1.    Objections. Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any Claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated.  The Debtor shall file all such objections on or before the 60th day from the Effective Date of the Court's Confirmation Order.

15.2.    Prosecution of Objections.  After the date of entry of the Confirmation Order, only the Debtor will have authority to file objections, litigate to judgment, settle or withdraw objections to Contested Claims.

15.3.    No Distributions Pending Allowance.  No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim.  If only a portion of a Claim is disputed (and in the absence of a basis for set off or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the Claim, pending resolution of the portion which is disputed.

15.4.    Distributions after Allowance.  Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

Dated:   ~~April 1~~July 15, 2022                **58 YORK PARTNERS, LLC**


                                                      */s/  Eric Kretschman*_____
                                                      Eric Kretschman
                                                      Managing Member

                                                      **CIARDI CIARDI & ASTIN**

                                                      */s/ Daniel S. Siedman*_____
                                                      Albert A. Ciardi, III, Esquire

21

Daniel S. Siedman, Esquire
1905 Spruce Street,
Philadelphia, PA  19103

Attorneys for the Debtor and
Debtor-in-Possession

# EXHIBIT A

# RICK IANIERI

2249 Turk Road

Doylestown, PA 18901

To:     Eric Kretschman, Managing Partner, 58 York Partners

Date:   July 15, 2022

Re:     Term Sheet for Refinance of 58 South York Road Property

Eric:

Below, please find the term sheet for the refinance of the property at 58 South York Road, Hatboro, PA.

| | |
|---:|:---|
| **Proposed Loan:** | $1,475,000.00 |
| **Entity:** | Co-Borrowers: 58 York Partners / Eric Kretschman |
| **Purpose:** | Refinance Bernie's Restaurant  located at 58 South York Road. |
| **Application fee:** | $5,000.00. Credited towards closing costs. |
| **Term:** | 12 months from closing. |
| **Payment:** | Monthly Interest only payments for initial 3 months, thereafter amortization on a 25-year term. |
| **Rate:** | 10 % per annum |
| **Collateral:** | 58 S. York Road, Hatboro PA 19040 |
| **Loan-to-Value:** | Not to exceed 80% LTV on as-is appraised value |
| **Prepayment Charge:** | Not Applicable. Can be paid at anytime without penalty. |

**Financial Reporting Requirements:**

1. Annual PFS statements dated within 2 months of the end of each fiscal year.
2. Submission of all existing leases, approvals, and newly executed leases.

**Loan Documents:**

1. Attorney prepared loan documents paid for by the borrower
2. Assignment of all plans, approvals, and leases.
3. Borrower to pay for all transaction fees incurred by the lender for preparing or modifying loan documents drafted by outside counsel.
4. Confession of Judgment to be signed by borrower and guarantors.

**Additional Items:**

1. All third-party fees to be paid by borrower. Lender will not require a new appraisal or Phase I, but will accept prior reports provided they are within 12 months for the appraisal and 36 months for the Phase I.
2. Borrower or Guarantors accept to personal credit and background check. Two forms of Identification required.
3. Provide lender with all operating and organizational documents including any information deemed reasonable for underwriting and closing.
4. Insurance naming Signature as loss payee and having fully insured lender title policy.

Agreed and Accepted: _____

Date: _____ 7/15/2022 _____

Eric Kretschman, Borrower

Please let me know if you need anything else, including additional background information on me or liquidity statement showing readily available funds to close the loan.

Sincerely,

Rick Ianieri